UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEKEO, INC. et al.,** : | |
| : | |
| Plaintiffs, : | |
| : | CIVIL ACTION NO. 25-cv-6500 |
| v. : | |
| : | |
| **PETER BRONGO,** : | |
| : | |
| Defendant. : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Defendant Peter Brogno, by and through his undersigned counsel, submits this memorandum of law in support of his motion to dismiss Plaintiffs' complaint.

**I.    INTRODUCTION**

It appears from the complaint that Plaintiffs believe that Defendant, a former employee of Plaintiff Dekeo, Inc., made unidentified purchases from a website for less money than he should have paid for those identified "goods and services." How that belief, however, can invoke federal diversity jurisdiction, support each of Plaintiffs' claims for conversion, fraud, and unjust enrichment, and a punitive damages award that is multiples greater than Plaintiffs' alleged actual damages, is not at all clear from the facts pleaded by Plaintiffs.

As set forth below, Plaintiffs' pleading failed to prove that at least one of the Plaintiffs allegedly suffered damages in excess of $75,000.00. Accordingly, Plaintiffs' complaint should be dismissed because this Court does not have subject-matter jurisdiction. If this Court finds that subject-matter jurisdiction is present, Plaintiffs' complaint should nonetheless be dismissed because Plaintiffs waived their rights to sue Defendant in any court.

In the event this Court does not dismiss the case, Plaintiffs' claim for conversion should be dismissed because Plaintiffs failed to plead any facts that could support Plaintiffs' conclusory allegation that Defendant converted unidentified "funds." Indeed, the minimal facts pleaded by Plaintiffs demonstrate that Defendant paid Plaintiffs money, not the other way around. Even if Defendant did not pay enough money for the unidentified "goods and services," that would not support a claim for conversion of money or any other property.

Likewise, Plaintiffs' claim for fraud should be dismissed because Plaintiffs' vague and conclusory allegations do not satisfy the pleading requirements for a fraud claim. Plaintiff merely pleaded facts that they believe Defendant may have paid less for unidentified "goods and services" than he should have paid. Plaintiffs allege that Defendant accomplished this via conclusory allegations of fraud that this Court should disregard in deciding whether Plaintiffs stated a claim. Accordingly, Plaintiffs' fraud claim should be dismissed.

## II.    ALLEGATIONS IN PLAINTIFFS' COMPLAINT

Mr. Brogno was employed by Plaintiff Dekeo, Inc., a Delaware corporation, from September 9, 2024, through May 6, 2025. Compl. at ¶ 1. According to Plaintiffs, Mr. Brogno's job for Plaintiff Dekeo was to manage customer service for an online retail store operated in the U.S. by a different business entity, Plaintiff JiffyShirts.com, (US) L.P., a Delaware limited partnership. Compl. at ¶¶ 2, 14-16. Aside from vaguely stating that Plaintiff Dekeo "employs individuals that work in connection with the Jiffy.com website and its business operations," Plaintiffs did not plead any specific facts to explain the relationship, if any, between Plaintiff Dekeo, Defendant's former employer, and Plaintiff JiffyShirts.com, such that both Plaintiffs – only one of which claimed to have employed Defendant – have standing to assert all of the instant claims and seek all of the alleged damages. Based on the complaint, Plaintiffs are

independent business entities that should have asserted independent claims (if any), not aggregated claims and damages without any facts to support aggregation.

According to Plaintiffs, during Mr. Brogno's employment with Dekeo, Mr. Brogno "had administrator access to the Jiffy.com computer system." Compl. at ¶ 20. Plaintiffs provided no specificity as to what they mean by "computer system" or "administrator access." But whatever Plaintiffs intended by that language, Plaintiffs terminated that "administrator access" and "all of Mr. Brogno's rights to access the *Jiffy.com* computer system" on May 6, 2025. Compl. at ¶ 21.

Even though Plaintiffs terminated Mr. Brogno's "administrator access" to the "computer system" on May 6, 2025, Plaintiffs alleged that on one or more unidentified occasions after May 6, 2025, Mr. Brogno "gained administrator access to the *Jiffy.com* computer system from a remote location." Compl. at ¶ 22. Plaintiffs did not plead when, after May 6, 2025, Mr. Brogno allegedly gained access, how Mr. Brogno allegedly gained access, from where Mr. Brogno allegedly gained access, or from whom Mr. Brogno allegedly gained access.

Plaintiffs alleged that Mr. Brogno used the vaguely identified "unauthorized access" to issue himself "discount codes" and "unearned store credits" that Mr. Brogno used to order unidentified "goods and services through the *Jiffy.com* website." Compl. at ¶¶ 22-24. Importantly, Plaintiffs did not plead any facts to support how Plaintiff Dekeo was damaged by Mr. Brogno's alleged use of unauthorized "discount codes" and "unearned store credits" on the Jiffy.com website, which is operated by an independent entity, Plaintiff JiffyShirts.com, (US) L.P.

Plaintiffs also pleaded that while Mr. Brogno was an employee of Plaintiff Dekeo, Mr. Brogno "used his corporate credit card for personal expenses, including personal orders placed through the *Jiffy.com* website." Compl. at ¶ 26. Plaintiffs did not plead any facts to support how

3

Plaintiff JiffyShirts.com – which was not Mr. Brogno's employer – would have been damaged by Mr. Brogno's alleged use of the "corporate credit card" Mr. Brogno was issued incident to his employment by Plaintiff Dekeo, or otherwise explain how Plaintiff JiffyShirts.com has standing to assert this claim.

Plaintiffs alleged aggregated damages "totaling over $25,644.23 in theft." Compl. at ¶ 27.[1] Plaintiffs' alleged aggregated damages were broken down as follows:

- $12,134.63 in fraudulent discounts allegedly used at Jiffy.com;
- $6,264.85 in fraudulent store credits allegedly used at Jiffy.com;
- $4,941.83 in unearned bulk discounts for purchases from Jiffy.com; and
- $2,302.92 in unauthorized Plaintiff Dekeo company credit card expenditures.

Compl. at ¶ 27. How Plaintiffs are computing the alleged aggregated damages, however, is not at all clear.

For example, with respect to the fraudulent discounts, was it Plaintiffs' intention to allege that Mr. Brogno purchased certain unidentified "goods and services" from JiffyShirts.com in exchange for an unidentified payment from Mr. Brogno to JiffyShirts.com, the price of which should have been $12,134.63 more than Mr. Brogno actually paid? Alternatively, was it Plaintiffs' intention to plead that the amount of money Mr. Brogno paid to JiffyShirts.com for certain unidentified "goods and services" using the discounts was $12,134.63, but the total amount should have been something higher than that, but for the improper discounts? The same questions apply to the alleged use of store credits: was the entire transaction using the credits

---

[1] Given that diversity jurisdiction rests on Plaintiffs' allegation that its aggregated damages total just over $25,000 and its argument that the facts pleaded might entitle Plaintiffs to punitive damages in an amount that is more than two times the actual aggregated damages, as explained more fully herein, Defendant submits that the Court should take a close look at the allegations as to standing and damages at this stage of the case to ensure subject-matter jurisdiction exits.

$6,264.85 when it should have been more, but for the alleged improper credits? These are essential questions that directly relate to the exercise of diversity subject-matter jurisdiction.

Likewise, Plaintiffs' only allegation about the alleged damages related to "unearned bulk discounts" was "Brogno well knew that Jiffy intended such discounts to be applied only to legitimate orders in which Jiffy actually received cash or other valuable consideration equal to the price charged." Compl. at ¶ 25. Plaintiffs made no effort whatsoever to explain, inter alia, how Defendant allegedly knew they were being applied and should not have been applied, how the "unearned bulk discounts" were allegedly used to purchase unidentified "goods and services" on unidentified dates, or how Plaintiffs arrived at the precise figure of $4,941.83. ***Critically, Plaintiffs do not allege any misrepresentation or other conduct by Mr. Brogno to obtain the alleged "unearned bulk discounts" as they did in connection with the alleged "discount codes" and "unearned store credits."***

Finally, Plaintiffs' only allegation concerning Mr. Brogno's use of the Dekeo company credit card was that "Jiffy also discovered that Brogno, ***while he was a Dekeo employee***, used his corporate credit card for personal expenses, including personal orders placed through the Jiffy.com website." Compl. at ¶ 26 (emphasis added). Plaintiffs made no effort at all to explain the policies or protocols concerning the issuance and use of Dekeo company credit cards, which Plaintiffs seem to imply that Mr. Brogno violated. Indeed, the scant facts alleged in the complaint do not support liability arising from the use of the Dekeo company credit card, let alone damages in the purported amount of $2,302.92. Moreover, based on the facts pleaded, it is not possible that JiffyShirts.com would have been damaged, given that it was not Mr. Brogno's employer.

### III. ARGUMENT

#### A. <u>Plaintiffs Have Not Established Subject-Matter Jurisdiction.</u>

As the parties invoking diversity jurisdiction, Plaintiffs "bear[] the burden to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016). At this stage of the case, "the sum claimed by [Plaintiffs] controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id. (quoting St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). "Accordingly, the question whether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." *Id. (quoting Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997)).

Additionally, "the distinct claims of separate plaintiffs cannot be aggregated when determining the amount in controversy." *Id*. Here, at least one of the Plaintiffs must prove that it alone can satisfy the amount-in-controversy requirement for this Court to exercise subject-matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559, 125 S. Ct. 2611, 2620, 162 L. Ed. 2d 502 (2005). Finally, the mere possibility that Plaintiffs may ultimately be entitled to seek punitive damages may be insufficient to satisfy the amount-in-controversy requirement when punitive damages constitute the vast majority of the claimed damages. *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 322 (3d Cir. 2010).

Here, minimal scrutiny of Plaintiffs' claims reveals that it is a legal certainty that the claims of each Plaintiff do not satisfy the more than $75,000.00 requirement. First, Plaintiffs impermissibly aggregate their distinct claims to arrive at $25,644.23 in actual alleged damages.

As set forth above, to the extent there are any viable claims related to the use of "discounts" or "credits" on the JiffyShirts.com website, logic leads to the conclusion that only JiffyShirts.com suffered any alleged damages. Likewise, any alleged damages related to the improper use of Mr. Brogno's corporate credit card would have only damaged Mr. Brogno's employer, Plaintiff Dekeo. Accordingly, based on the facts alleged by Plaintiffs, Plaintiff Dekeo's actual damages are no more than $2,302.92 (for unauthorized use of the company credit card), and Plaintiff JiffyShirts.com's actual damages are not more than $23,341.31 (for discounts and credits on JiffyShirts.com), not even close to the requirement for diversity jurisdiction.

Second, to satisfy the amount-in-controversy requirement, Plaintiffs must prove by a preponderance of evidence that the facts related to Mr. Brogno's use of the company credit card provide Plaintiff Dekeo with the ability to recover at least $73,000.00 in punitive damages on a claim for no more than $2,302.92, *or* that the facts related to Mr. Brogno's use of discounts and credits provide Plaintiff JiffyShirts.com with the ability to recover at least $52,000.00 in punitive damages for a claim for no more than $23,341.31. The scant facts pleaded by Plaintiffs, however, do not support such a massive punitive damages windfall for either Plaintiff.

As set forth herein, Plaintiffs made extremely vague allegations as to how Mr. Brogno was allegedly able to make purchases at unauthorized discounts, which caused no more than $23,341.31 in actual aggregated damages. Further, to the extent this Court dismisses either or both of the conversion and fraud claims, leaving only an unjust enrichment claim, or even has doubts about the sufficiency of the factual allegations by Plaintiffs, that would certainly lean in favor of satisfying the "legal certainty" standard. Defendant respectfully submits that subject-matter jurisdiction is lacking here, and therefore, Plaintiffs' complaint should be dismissed.

**B.      Even if Subject Matter Jurisdiction Exists, Plaintiffs Nonetheless Failed to State Claims.**

**1.      Standard Under Federal Rule of Civil Procedure 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. FED.R.CIV.P. 12(b)(6). When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (*quoting Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*quoting Twombly*, 550 U.S. at 557). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (*quoting Iqbal*, 550 U.S. at 679).

Courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id*. at 787 (alterations in original) (*quoting Iqbal*, 550 U.S. at 675). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id*. (*quoting Iqbal*, 550 U.S. at 679). Third, "'[w]hen there are well pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id*. (alterations in original) (*quoting Iqbal*,

8

550 U.S. at 679). After the Supreme Court's decision in *Twombly*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. **<u>This standard asks for more than a sheer possibility that a defendant has acted unlawfully</u>**. *Id*. Accord *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll **<u>civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed me accusation</u>**.") (emphasis added; internal quotation marks omitted).

> 2. **Plaintiffs' Claims are Barred by the Separation Agreement and Release Between the Parties.**

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id*. (*quoting Shaw v. Digital Equip. Corp.* 82 F.3d 1194, 1220 (1st Cir. 1996).

Here, Plaintiffs deliberately failed to point out that on May 6, 2025, when Mr. Brogno's employment with Plaintiff Dekeo ended, the parties entered into that certain Dekeo Inc. Separation Agreement and Release, a copy of which is **Exhibit A** hereto. Mr. Brogno, Plaintiff Dekeo, and Plaintiff JiffyShirts.com are all "Parties" to the Separation Agreement and Release. Ex. A at p. 1. In the Separation Agreement and Release, Plaintiffs specifically waived their rights to bring any claims in this Court or any court against Mr. Brogno. The Agreement states: "**THE PARTIES HEREBY AGREE TO WAIVE THEIR RIGHT TO HAVE ANY DISPUTE BETWEEN THEM RESOLVED IN A COURT OF LAW BY A JUDGE OR JURY.**" Ex. A at p. 6. The parties' contract is clear and should be enforced. If this Court has subject-matter

9

jurisdiction, Plaintiff's complaint should be dismissed from this Court with prejudice as mandated by the Separation Agreement and Release.

### 3. Plaintiffs Have Not Stated a Claim for Conversion.

In the first count, Plaintiffs contended that Mr. Brogno is liable for conversion because he: (i) "***deprived Jiffy of its right to the funds*** that Brogno stole from Jiffy by fraudulently causing the *Jiffy.com* computer system to issue unearned store credits and discounts . . . and then using those unearned credits and discounts to pay for orders that Brogno placed through the *Jiffy.com* website in lieu of cash or other genuine consideration;" and (ii) "used his corporate credit card, for which he was authorized only to make qualified business-related purchases in support of the company, to make personal purchases through the *Jiffy.com* website[, and b]y doing so, Brogno ***deprived Jiffy of its right to the funds*** that the credit card applied to the Brogno orders." Compl. at ¶¶ 30-32. Plaintiffs' conversion claim should be dismissed because Plaintiffs did not plead facts to support a plausible claim conversion of money, i.e., "funds," under Pennsylvania law. *Iqbal*, 556 U.S. at 678.

"Conversion occurs when a party deprives the owner from his right of or use of or possession of a chattel, without the owner's consent and without lawful justification." *Montgomery v. Fed. Ins. Co.*, 836 F. Supp. 292, 300 (E.D. Pa. 1993).

> Moreover, money can be the subject of conversion. *Id.* However, before money can be converted, it must belong to the plaintiff. *Lee Tire and Rubber Co. v. Bonholtzer,* 38 Del.Co. 331, 81 Pa. D. & C. 218, 221 (1951). Thus, an action for conversion will not lie where an alleged converter borrowed money, even though he had an intent not to pay back the loan. *Id.* Nor is there conversion when the money is collected to satisfy a debt. *Id.* On the other hand, if a plaintiff entrusts money or goods with the defendant, with the intent that the defendant sell or transfer the goods and give the proceeds to the plaintiff, and defendant keeps the proceeds or applies it to his own use, there has been conversion. *Id.*

*Id*.

Here, Plaintiffs do not allege that either of them entrusted Mr. Brogno with the "funds" that they conclude he converted. The facts pleaded, however vague, fundamentally preclude any such claim against Mr. Brogno. According to the complaint, **_Mr. Brogno allegedly received certain "goods and services," i.e., not "funds," by paying a discounted price via improper discounts and credits._** Giving Plaintiffs every reasonable inference, no fair reading of the complaint could allow for a cause of action for conversion of "funds" or any identifiable chattel based on the facts pleaded here. Plaintiffs' claim for conversion should be dismissed.

### 4. Plaintiffs Have Not Stated a Claim for Fraud.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED.R.CIV.P. 9(b). "Under Rule 9(b), a plaintiff alleging fraud must plead '(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage.'" *Sun Co. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 369 (E.D. Pa. 1996) (*quoting Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir.), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992) (citation omitted)).

> There is a special kind of proximate cause requirement for fraud and misrepresentation, and plaintiff must demonstrate that a specific statement *caused* a specific harm." *Hurt v. Philadelphia Hous. Auth.,* 806 F.Supp. 515, 530 n. 25 (E.D.Pa.1992) (emphasis in original). "Plaintiff may not simply point to a bad result and allege fraud. Rather, plaintiff must ... inject precision and some measure of substantiation into [the] allegations [of fraud].... **_who, what, when, where, and how: the first paragraph of a newspaper story would satisfy the particularity requirements_**." *In re*

11

>   *Chambers Dev. Sec. Litig.,* 848 F.Supp. 602, 616 (W.D.Pa.1994) (citations omitted)(emphasis added).

*Id*.

In their second count, Plaintiffs have simply pointed to a bad result and alleged fraud. Giving Plaintiffs the benefit of all reasonable inferences, Plaintiffs alleged that Mr. Brogno purchased unidentified "goods and services" from the JiffyShirts.com website for less money than he should have paid for the unidentified "goods and services." Plaintiffs alleged that Mr. Brogno accomplished this by gaining access to a computer system that Mr. Brogno had legitimate access to until May 6, 2025. **_Other than implying that the access occurred after May 6, 2025, Plaintiffs pleaded no other facts whatsoever that would "inject precision and some measure of substantiation into [the] allegations [of fraud]."_** *Sun Co.*, 939 F. Supp. at 369. Beyond suing Mr. Brogno, Plaintiffs did not plead the "who, what, when, where, and how" of the fraud claim. *Id*.

Each of the Plaintiffs failed to plead sufficient factual matter to state a plausible fraud claim. *Iqbal*, 556 U.S. at 678. At best, Plaintiffs' allegations allow for the possibility that Defendant may have acted in a way that Plaintiffs feel was unlawful. The pleading standards applicable to this action, however, require more from Plaintiffs than vague claims that Defendant caused them some vaguely identified harm. *Id*. Accordingly, Plaintiffs' fraud claim should be dismissed.

## IV.     CONCLUSION

In sum, this Court lacks jurisdiction because Plaintiffs cannot satisfy the amount-in-controversy requirement. Even if this Court exercises jurisdiction, Plaintiffs' claims are barred by the Separation Agreement and Release. If the Separation Agreement and Release does not bar all claims, Plaintiffs failed to state a claim for conversion or fraud. Finally, if this Court initially

12

finds that there is jurisdiction, and that the Separation Agreement and Release does not mandate dismissal of the complaint, yet dismisses the conversion or fraud claims, or both, this Court should revisit whether the amount-in-controversy requirement has still been met with respect to the remaining claim(s).

    Respectfully submitted,

    **WISLER PEARLSTINE, LLP**

    */s/ Brian R. Elias*
    **BRIAN R. ELIAS, ESQUIRE**

    *Attorneys for Defendant*