**UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEKEO, INC. et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION NO. 25-cv-6500** |
| **v.** | : | |
| | : | |
| **PETER BRONGO,** | : | |
| | : | |
| **Defendant.** | : | |

## MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant Peter Brogno, by and through his undersigned counsel, hereby moves this Court to dismiss Plaintiffs' Second Amended Complaint for the reasons outlined in the memorandum of law filed with this motion to dismiss.

**WHEREFORE**, Defendant respectfully requests that this Court stay this case in its entirety pursuant to the arbitration agreement between the parties, or alternatively, dismiss with prejudice Plaintiffs' Second Amended Complaint, and grant Defendant such additional relief as the Court deems appropriate.

Respectfully submitted,

**WISLER PEARLSTINE, LLP**

*/s/ Brian R. Elias*
**BRIAN R. ELIAS, ESQUIRE**

*Attorneys for Defendant*

**UNITED STATE DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEKEO, INC. et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION NO. 25-cv-6500** |
| **v.** | : | |
| | : | |
| **PETER BRONGO,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Like Plaintiffs' first two attempts to plead actionable claims against Defendant, Plaintiffs' Second Amended Complaint (the "Complaint") is barred by the May 8, 2025, Separation Agreement and Release (the "Separation Agreement"), a copy of which is **Exhibit A** hereto, which was executed by the parties when Mr. Brogno's employment with Plaintiff Dekeo Inc. ("Dekeo") ended. 2d. Am. Compl. [ECF 34] at ¶ 22. The Separation Agreement contains a broad agreement by the parties to arbitrate all claims related to Mr. Brogno's employment, and Mr. Brogno's release in favor of Plaintiffs. Under Delaware law (the Separation Agreement is governed by Delaware law) and the Federal Arbitration Act's strong policy favoring arbitration, this Court lacks subject matter jurisdiction over all claims.

In addition, Plaintiffs still have not provided any facts to support the most essential component underlying all of their theories, i.e., how Defendant unlawfully accessed their computer system to "obtain and generate unearned store credits, coupons, and discounts," in order to make the purchases identified in the Complaint. Plaintiffs spend all their words identifying the alleged purchases and how they are allegedly tied to Defendant. But Plaintiffs provided no details whatsoever about how Defendant accessed the system, which is information

Plaintiffs must have to bring this case. At best, Plaintiffs pleaded facts to support the *possibility* that Defendant accessed the system. The law, however, requires Plaintiffs to plead facts sufficient to show that it is *plausible* Defendant accessed the system. Indeed, Plaintiffs' refusal – on their third attempt – to plead any of these dispositive facts should raise the Court's antennae.

For this and additional reasons set forth below, Plaintiffs have failed to state viable claims. Defendant's instant motion should be granted.

## I.    ALLEGATIONS IN PLAINTIFFS' SECOND AMENDED COMPLAINT

Mr. Brogno was employed by Plaintiff Dekeo, Inc., a Delaware corporation, from September 9, 2024, through May 6, 2025. 2d. Am. Compl. at ¶¶ 17. According to Plaintiffs, Mr. Brogno's job for Plaintiff Dekeo was to manage customer service for an online retail store operated in the U.S. by a different business entity, Plaintiff JiffyShirts.com, (US) L.P., a Delaware limited partnership ("Jiffy"). 2d. Am. Compl. at ¶¶ 18-19. Aside from vaguely stating that Plaintiff Dekeo "employs individuals that work in connection with the Jiffy.com website and its business operations" [2d. Am. Compl. at ¶ 16], Plaintiffs did not plead any specific facts to explain the relationship, if any, between Plaintiff Dekeo, Defendant's former employer, and Plaintiff Jiffy, such that both Plaintiffs – only one of which claimed to have employed Defendant – have standing to assert all of the instant claims and seek all of the alleged damages.[1]

According to Plaintiffs, during Mr. Brogno's employment with Dekeo, Mr. Brogno "was granted access to [Jiffy's] Kata," a computer system that Plaintiff Jiffy used "to manage coupons, store credits, product pricing, product-related site content, limited user account functions, and online sales transactions." 2d. Am. Compl. at ¶¶ 19-20. "Upon termination, Dekeo immediately

---

[1] Based on the amended pleading, Plaintiffs are independent business entities that should have asserted independent claims (if any).

revoked all of Brogno's rights to access Kata, and any other internal Jiffy computer system or network." 2d. Am. Compl. at ¶ 23. Plaintiffs do not provide any factual specificity concerning how Dekeo revoked Defendant's "rights to access" Jiffy's system. Indeed, even though Plaintiffs alleged that Dekeo revoked all of Mr. Brogno's "rights to access" the computer system on May 6, 2025, Plaintiffs' alleged that "Brogno continued to access Kata remotely without Dekeo's authorization . . . to generate or acquire discount coupon codes to which he was not entitled and that Jiffy had not approved or authorized for his personal use or accounts." 2d. Am. Compl. at ¶¶ 24-25.[2] Plaintiffs further alleged that Mr. Brogno "used the email address jiffytest1000@gmail.com, which was created on May 9, 2025, to generate the coupon code 7DN87FCHTB, which he then applied to multiple orders on Jiffy.com." 2d. Am. Compl. at ¶ 26. ***These are all essentially conclusory allegations***.

***Plaintiffs did not plead any facts*** tending to show that it was ***plausible*** that Mr. Brogno accessed the system after Plaintiffs revoked his access (unless they never actually revoked his access). For example, Plaintiffs failed to plead any facts to show:

- **when** Mr. Brogno allegedly accessed the system after his privileges were revoked;
- **how** Mr. Brogno allegedly accessed the system after his privileges were revoked;
- **from where** Mr. Brogno allegedly accessed the system;
- **how** Mr. Brogno allegedly used the unexplained access to generate or acquire discount codes;
- **how** Mr. Brogno allegedly created the jiffytest1000@gmail.com on May 9, 2025.

---

[2] One plausible inference from the facts alleged, or lack thereof, about the revocation of Defendant's "rights to access" is that Plaintiffs took no affirmative steps to prevent Defendant from accessing the system after his employment ended. As set forth herein, Plaintiffs' pleading in this regard is fatal to many claims.

These are dispositive facts that Plaintiffs must possess to bring this case. That Plaintiffs refuse to plead them on their third effort is troublesome.

To be sure, Plaintiffs' third effort at pleading their case contains details about the alleged _**purchases**_, but Plaintiffs have still not provided any details whatsoever as to the "who, what, when, where, and how" _**that allowed Plaintiffs to merely conclude that Mr. Brogno improperly accessed the computer system and generated the discounts and credits**_. Absent details about the gravamen of the claim, i.e., Defendant's alleged access to the system to create discount codes and credits, Plaintiffs have not pleaded any unlawful conduct in connection with the purchases.

Plaintiffs' allegations concerning Mr. Brogno's alleged misuse of the Dekeo company credit card are also muddy at best. Plaintiffs merely alleged that "Brogno obtained approximately $3,724.15 in orders from Jiffy for his personal use without paying any money out of his pocket by using various combinations of coupons, bulk and shipping discounts, and his corporate credit card." 2d. Am. Compl. at ¶ 48. But _**Plaintiffs then immediately plead that at least one-third of that amount was completely legitimate**_: "Although some coupon codes and store credits applied to Brogno's personal orders via his corporate credit card appear genuine, Plaintiffs continue their investigation and aver that the $2,091.00 in charges Brogno incurred are fraudulent and unauthorized. Plaintiffs reserve the right to allege that some or all of the coupons, credits, and discounts used for the orders listed in Exhibit C were fraudulent and unauthorized, as its investigations continue and discovery proceeds." 2d. Am. Compl. at ¶ 50. Plaintiffs made no effort at all to, inter alia, explain the policies or protocols concerning the issuance and use of Dekeo company credit cards, which Plaintiffs seem to imply that Mr. Brogno violated. The scant facts alleged in the amended complaint do not support liability arising from the use of the Dekeo

company credit card, let alone damages in the purported amount of $2,091.00.[3] Moreover, based on the facts pleaded, it is not possible that JiffyShirts.com would have been damaged, given that it was not Mr. Brogno's employer.

As specifically pleaded by Plaintiffs, "[o]n or about May 8, 2025, Brogno executed a formal separation agreement," a copy of which is **Exhibit A** hereto. 2d. Am. Compl. at ¶ 22. The Agreement contains a broad agreement to arbitrate among the parties:

> 18.     ARBITRATION.  THE PARTIES AGREE THAT ANY AND ALL DISPUTES ARISING OUT OF THE TERMS OF THIS AGREEMENT, THEIR INTERPRETATION, AND ANY OF THE MATTERS HEREIN RELEASED, SHALL BE SUBJECT TO ARBITRATION IN THE STATE OF DELAWARE BEFORE JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES ("JAMS RULES").  THE ARBITRATOR MAY GRANT INJUNCTIONS AND OTHER RELIEF IN SUCH DISPUTES.  THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH DELAWARE LAW, INCLUDING THE DELAWARE COURT OF CHANCERY RULES, AND THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL DELAWARE LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO ANY CONFLICT-OF-LAW PROVISIONS OF ANY JURISDICTION. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH DELAWARE LAW, DELAWARE LAW SHALL TAKE PRECEDENCE.   THE DECISION OF THE ARBITRATOR SHALL BE FINAL, CONCLUSIVE, AND BINDING ON THE PARTIES TO THE ARBITRATION.    THE PARTIES AGREE THAT THE PREVAILING PARTY IN ANY ARBITRATION SHALL BE ENTITLED TO INJUNCTIVE RELIEF IN ANY COURT OF COMPETENT JURISDICTION TO ENFORCE THE ARBITRATION AWARD.  EACH PARTY SHALL SEPARATELY PAY FOR ITS RESPECTIVE COUNSEL FEES AND EXPENSES; PROVIDED, HOWEVER, THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW.  THE PARTIES HEREBY AGREE TO WAIVE THEIR RIGHT TO HAVE ANY DISPUTE BETWEEN THEM RESOLVED IN A COURT OF LAW BY A JUDGE OR JURY.  NOTWITHSTANDING THE FOREGOING, THIS SECTION WILL NOT PREVENT EITHER PARTY FROM SEEKING INJUNCTIVE RELIEF (OR ANY OTHER PROVISIONAL REMEDY) FROM ANY COURT

---

[3] Down from $2,302.92 in the prior pleading.

HAVING JURISDICTION OVER THE PARTIES AND THE SUBJECT MATTER OF THEIR DISPUTE RELATING TO THIS AGREEMENT AND THE AGREEMENTS INCORPORATED HEREIN BY REFERENCE. SHOULD ANY PART OF THE ARBITRATION AGREEMENT CONTAINED IN THIS PARAGRAPH CONFLICT WITH ANY OTHER ARBITRATION AGREEMENT BETWEEN THE PARTIES, THE PARTIES AGREE THAT THIS ARBITRATION AGREEMENT SHALL GOVERN. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS (INCLUDING NEGLIGENCE), BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. THIS SECTION HAS BEEN FULLY DISCUSSED BY EACH OF THE PARTIES HERETO AND THESE PROVISIONS WILL NOT BE SUBJECT TO ANY EXCEPTIONS. EACH PARTY HERETO HEREBY FURTHER WARRANTS AND REPRESENTS THAT SUCH PARTY HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH PARTY KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

Ex. A hereto at pp. 6-7.

## II.    ARGUMENT

### A.    This Court Lacks Subject Matter Jurisdiction Because of the Parties' Agreement to Arbitrate.

Under Federal Rule of Civil Procedure 12(b)(1), a district court may dismiss a complaint for lack of subject matter jurisdiction when a valid arbitration agreement binds the parties and requires arbitration of the dispute at issue. The Federal Arbitration Act divests the court of jurisdiction over claims subject to arbitration. *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (3d Cir. 2000). When the affirmative defense of arbitrability appears on the face of the complaint or from documents incorporated by reference in the complaint, the court may resolve the issue under a motion to dismiss standard without awaiting discovery. This expedited resolution serves the FAA's policy favoring prompt dispute resolution. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013).

**1.      The Separation Agreement Contains a Valid Arbitration Clause.**

The threshold requirement for compelling arbitration is the existence of a valid written agreement to arbitrate. *See* 10 Del. C. § 5701,[4] 9 U.S.C. § 4. Here, the Separation Agreement unquestionably satisfies this requirement. The Separation Agreement is a written contract executed by Mr. Brogno on the one hand, and Plaintiffs Dekeo and Jiffy on the other, on May 6 and May 8, 2025, respectively. Ex. A at p. 10. The Separation Agreement documents consideration flowing to both parties. In exchange for Mr. Brogno's execution of the Separation Agreement and compliance with its terms, Plaintiffs agreed to pay him a lump sum separation payment equivalent to two weeks of salary, agreed not to contest his claim for unemployment benefits, and provided other consideration. Ex. A at p. 1. In return for that consideration, Plaintiffs received the benefit of, inter alia, a release and waiver of claims, confidentiality, the return of property, and non-disparagement from Mr. Brogno. Ex. A at pp. 2-5. The arbitration provision is set forth in Section 18 in clear, conspicuous, all-capital letters spanning more than a full page. Ex. A at pp. 6-7.

**2.      The Arbitration Clause Is Broad and Encompasses All of Plaintiffs' Claims.**

The language of the arbitration provision is sweeping in scope as it applies to "ANY AND ALL DISPUTES ARISING OUT OF THE TERMS OF THIS AGREEMENT, THEIR INTERPRETATION, AND ANY OF THE MATTERS HEREIN RELEASED." Ex. A at p. 6. This language encompasses three distinct categories of disputes: (1) disputes arising out of the Separation Agreement's terms; (2) disputes concerning the interpretation of those terms; and (3) disputes involving any of the matters released in the Separation Agreement. Both federal and

---

[4] The Separation Agreement "shall be governed by the laws of the State of Delaware, without regard for choice-of-law provisions." Ex. A at p. 8.

Delaware law require far-reaching arbitration clauses, such as the one in this case, to be interpreted broadly.

When clauses containing "phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction" and are construed to reach all disputes with a significant relationship to the contract. *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000). "[A]n agreement to arbitrate a particular dispute 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id*. (*quoting AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 89 L. Ed. 2d 648, 106 S. Ct. 1415  (1986)). Delaware courts apply "basic principles of contract interpretation" to determine the scope of arbitration provisions and resolve doubts in favor of arbitrability. *Coronado Coal II, LLC v. Blackhawk Land & Res., LLC*, 293 A.3d 372 (Del. 2023).

Here, the arbitration clause goes even further by expressly covering disputes over "ANY OF THE MATTERS HEREIN RELEASED." Ex. A at p. 6. Section 5 of the Separation Agreement releases claims relating to Mr. Brogno's employment relationship, termination, wrongful discharge, breach of contract, breach of fiduciary duty, conversion, fraud, unjust enrichment, and violations of federal and state statutes—precisely the types of claims asserted in Plaintiffs' instant Complaint.

Each claim in the Complaint falls squarely within the scope of the arbitration provision. The Complaint alleges that Mr. Brogno engaged in unauthorized conduct during his employment and after his termination—conduct that forms the basis of purported claims for breach of fiduciary duty, conversion, trespass to chattel, fraudulent inducement, and unjust enrichment. These are the very claims expressly released and made subject to arbitration in the Separation

Agreement. The Separation Agreement's release provision specifically covers "any and all claims relating to or arising from Employee's employment relationship with the Company Group and the termination of that relationship," including claims for breach of fiduciary duty, conversion, fraud, unjust enrichment, and breach of contract. Counts IV (breach of fiduciary duty), V and VI (conversion), VII and VIII (trespass to chattel), IX (fraudulent inducement), and X (unjust enrichment) all arise directly from the employment relationship and its termination—matters expressly addressed in the Separation Agreement.

Plaintiffs' federal statutory claims under the Computer Fraud and Abuse Act (CFAA) and the Defend Trade Secrets Act (DTSA), as well as their state-law trade secrets claim, are also subject to the arbitration provision. Federal statutory claims are routinely arbitrable under the FAA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 111 S. Ct. 1647 (1991). The FAA's text and policy reflect a strong federal interest in enforcing arbitration agreements for all disputes, including those arising under federal statutes, absent explicit congressional intent to the contrary. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 176-178 (3d Cir. 2010). Federal law firmly establishes that statutory claims are subject to arbitration when they fall within the scope of a broad arbitration agreement. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 724 (9th Cir. 1999).[5]

Here, Plaintiffs' CFAA and DTSA claims arise directly from Mr. Brogno's alleged misuse of computer access and alleged proprietary information during and after his employment—conduct that unquestionably relates to his employment relationship, his post-termination obligations, and the matters released in the Separation Agreement. These claims are

---

[5] In *Simula, Inc. v. Autoliv, Inc.*, the Ninth Circuit held that antitrust claims under the Sherman Act, Lanham Act claims, defamation, misappropriation of trade secrets, breach of nondisclosure agreements, and state trade secrets act claims are all subject to arbitration under a broad arbitration clause encompassing disputes "arising in connection with this Agreement."

closely related to the Separation Agreement and fall within the arbitration clause's broad scope. *Simula, Inc.*, 175 F.3d 716 (9th Cir. 1999); *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88 (4th Cir. 1996)

Moreover, the arbitration provision's explicit coverage of "ANY OF THE MATTERS HEREIN RELEASED" independently brings all of Plaintiffs' claims within the arbitration agreement's scope. The release provision in Section 5 specifically identifies the following categories of claims:

a.    "[A]ny and all claims relating to or arising from [Brogno's] employment relationship with the Company Group the and termination of that relationship;"

b.    "[A]ny and all claims for . . . fraud; negligent or intentional misrepresentation . . . unfair business practices . . . negligence . . . [and] conversion . . ..;"

c.    "[A]ny and all claims for violation of any federal, state, or municipal statute . . .."

d.    "[A]ny and all claims for attorneys' fees and costs."

Ex. A at pp. 2-3. All 10 causes of action in Plaintiffs' Complaint fall within one or more of these released categories. By expressly making arbitrable "any of the matters herein released," the parties agreed to arbitrate precisely the types of disputes now asserted in this litigation.

Because it is beyond dispute that the parties executed a valid agreement to arbitrate the claims brought by Plaintiffs here, this Court lacks subject matter jurisdiction and must stay this case pending arbitration. 9 U.S.C. § 3. The Supreme Court has confirmed that this requirement is

10

mandatory, not discretionary. *Smith v. Spizzirri*, 601 U.S. 472, 476-477 144 S. Ct. 1173 (2024).[6] As such, this Court must stay this case in favor of the agreement to arbitrate.

**B.** **Plaintiffs' Claims Should Otherwise be Dismissed Under Rule 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for failure to state a claim upon which relief can be granted. FED.R.CIV.P. 12(b)(6). When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (*quoting Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Twombly*, 550 U.S. at 557). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (*quoting Iqbal*, 550 U.S. at 679).

Courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original) (*quoting Iqbal*, 550 U.S. at 675). "Second, [the court] should

---

[6] Delaware law independently compels the same result. Delaware courts "lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate." *Coronado Coal II, LLC*, 293 A.3d 372 (Del. 2023). When parties have entered into a valid arbitration agreement covering the disputes at issue, Delaware law mandates enforcement of that agreement. 10 Del. C. § 5701.

identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id*. (*quoting Iqbal*, 550 U.S. at 679). Third, "'[w]hen there are well pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id*. (alterations in original) (*quoting Iqbal*, 550 U.S. at 679).

After the Supreme Court's decision in *Twombly*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. ***This standard asks for more than a sheer possibility that a defendant has acted unlawfully***. *Id*. Accord *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll ***civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed me accusation***.") (emphasis added; internal quotation marks omitted).

Importantly for this case, for claims under the CFAA, courts strictly construe the statute's requirements, particularly the definitions of "without authorization," "exceeds authorized access," "damage," and "loss." *Van Buren v. U.S.*, 593 U.S. 374, 141 S. Ct. 1648 (2021); *U.S. v. Nosal*, 676 F.3d 854 (9th Cir. 2012). Of course, Plaintiffs bear the burden of pleading facts establishing each element of the statutory violation.

### C.    Plaintiffs Failed to Plausibly Plead "Unauthorized Access" Under the CFAA.

The CFAA is an anti-hacking statute designed to address unauthorized intrusions into computer systems, not ordinary workplace misconduct or breaches of use policies. *Van Buren*, 593 U.S. 374; *Nosal*, 676 F.3d 854. The CFAA provides a civil cause of action for "[a]ny person who suffers damage or loss" from conduct that violates the Act's criminal provisions. 18 U.S.C. § 1030. Section 1030(a)(2)(C) prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] information from any

protected computer." *See also U.S. v. Auernheimer*, 748 F.3d 525, 534 (3d Cir. 2014). Section 1030(a)(4) prohibits "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value." Both provisions require that the defendant either (1) accessed a protected computer "without authorization" or (2) "exceed[ed] authorized access." 18 U.S.C. § 1030; *Auernheimer*, 748 F.3d 525, 533 (3d Cir. 2014).

The CFAA defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Van Buren*, 593 U.S. 374. The Supreme Court and the Third Circuit have narrowly construed these terms to target genuine hacking—circumventing technological or code-based access restrictions—not the misuse of otherwise-authorized access for improper purposes. *Van Buren*, 593 U.S. 374, 376; *U.S. v. Eddings*, 161 F.4th 199, 205-209 (3d Cir. 2025); *NRA Grp., LLC v. Durenleau*, 154 F.4th 153, 166-170 (3d Cir. 2025). Plaintiffs' allegations fail to satisfy these elements for three independent reasons: (i) the alleged conduct during Mr. Brogno's employment constituted misuse, not unauthorized access or exceeding authorization; (ii) Plaintiffs fail to allege that Mr. Brogno circumvented any technological or code-based access restrictions; and (iii) the alleged post-termination conduct fails to plausibly allege that authorization was actually revoked.

### 1.    The Alleged Conduct During Employment Constitutes Misuse of Authorized Access, Not "Exceeding Authorized Access."

The Supreme Court's decision in *Van Buren* is controlling and dispositive of Plaintiffs' during-employment allegations. In *Van Buren*, a police officer accessed a law enforcement database for an improper purpose—to obtain license-plate information in exchange for money—

in violation of his department's use policies. *Van Buren*, 593 U.S. at 378. The Supreme Court held that this conduct did not violate the CFAA because the officer was authorized to access the database and its contents. *Van Buren*, 593 U.S. at 378-396. The Court explained that the CFAA's "exceeds authorized access" clause "does not cover those who, like Van Buren, have improper motives for obtaining information that is otherwise available to them." *Id*.

The Court emphasized that the statutory definition of "exceeds authorized access" focuses on *what information* a user is entitled to obtain, not *why* the user seeks it. *Van Buren*, 593 U.S. at 378. The Court rejected the government's argument that the CFAA criminalizes access for any improper purpose, noting that such an interpretation would "attach criminal penalties to a breathtaking amount of commonplace computer activity." *Van Buren*, 593 U.S. at 376. *See also NRA Grp., LLC*, 154 F.4th at 166. "If the 'exceeds authorized access' clause criminalizes every violation of a computer-use policy, then millions of otherwise law-abiding citizens are criminals." *Van Buren*, 593 U.S. at 394.

The Third Circuit has faithfully applied *Van Buren*'s framework. In *NRA Group, LLC v. Durenleau*, the Third Circuit held that employees who accessed their employer's computer systems in violation of internal use policies did not "exceed authorized access" under the CFAA. *NRA Grp., LLC*, 154 F.4th at 166-169. The court emphasized that "were the 'exceeds authorized access' language of the CFAA to apply to every violation of a computer-use policy, then millions of otherwise law-abiding citizens [would be] criminals." *Id*. (*quoting Van Buren*, 593 U.S. at 394). The court concluded that "an employee who sends a personal e-mail or reads the news using her work computer" does not violate the CFAA merely because such use violates workplace policy. *Id*.

14

Here, Plaintiffs' allegations regarding Mr. Brogno's conduct *during his employment* describe precisely the type of alleged policy-violative misuse that *Van Buren* and *Durenleau* held does not constitute "exceeding authorized access." Plaintiffs alleged that Mr. Brogno "was granted access to Kata" as part of his job duties. Plaintiffs do not allege that Mr. Brogno accessed areas of Kata that were off-limits to him or that he circumvented any access restrictions. Instead, Plaintiffs allege that Mr. Brogno "misused his access to Kata to generate or acquire coupon codes and store credits to which he was not entitled and that Jiffy had not approved or authorized for his personal use or accounts, thereby exceeding the scope of his permitted access." This is a textbook allegation of *misuse*—using authorized access for an improper purpose—not "exceeding authorized access" as defined by the CFAA.

### 2. Plaintiffs Failed to Allege That Mr. Brogno Circumvented Any Technological or Code-Based Access Restrictions.

Both *Van Buren* and Third Circuit precedent make clear that the CFAA is aimed at circumventing technological or code-based barriers to access—commonly understood as "hacking." *Van Buren*, 593 U.S. at 376; *Eddings*, 161 F.4th at 205-209; *NRA Grp., LLC*, 154 F.4th at 166-170. In *Van Buren*, the Supreme Court explained that the "exceeds authorized access" applies when a defendant "accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 593 U.S. 374, 396. The touchstone is whether the user obtained information from computer areas to which the user's authorization did not extend—***a technological, not purpose-based, limitation***. *Id*.

The Third Circuit in *NRA Group* applied this principle, holding "absent evidence of code-based hacking, the CFAA does not countenance claims premised on a breach of workplace computer-use policies by current employees." *NRA Grp., LLC*, 154 F.4th at 169. In *NRA Grp.*,

15

employees who accessed files on their employer's system did not "exceed authorized access" where they had technological permission to view those files, even if they accessed them for improper purposes. *Id*.

Here, Plaintiffs alleged that Mr. Brogno used Kata to generate coupon codes and store credits. But Plaintiffs did not allege that these functions were technologically restricted or that Mr. Brogno bypassed any access controls to reach them. Plaintiffs alleged that Mr. Brogno "was granted access to Kata" and that Kata is used "to manage coupons, store credits, product pricing, product-related site content, limited user account functions, and online sales transactions." Plaintiffs did not allege that Mr. Brogno lacked permission to access the coupon-generation or store-credit features of Kata as part of his Senior Director of Customer Service role. Instead, Plaintiffs alleged that Mr. Brogno used these features in ways that violated Plaintiffs' policies or expectations. This is insufficient under *Van Buren, NRA Grp.*, and *Eddings*. Plaintiffs' failure to allege that Mr. Brogno circumvented any technological barriers means that Plaintiffs have not stated a claim under the CFAA.

The Third Circuit's reasoning in *Eddings* reinforces this conclusion. The court emphasized that "authorization" under the CFAA turns on whether the employer has taken affirmative steps to rescind access—a technological act—not on whether the employee's subjective purpose aligns with the employer's preferences. *Eddings*, 161 F.4th at 205-209. Even assuming *arguendo* that Plaintiffs subjectively disapproved of Mr. Brogno using Kata's coupon and credit features for personal benefit, that subjective disapproval does not transform authorized

16

access into "exceeding authorized access" absent technological restrictions that Mr. Brogno circumvented.[7]

### 3. Plaintiffs Failed to Plausibly Allege That Authorization Was Actually Revoked Post-Termination.

Plaintiffs also alleged that Mr. Brogno accessed Kata *after* his termination "without authorization." But the Third Circuit has held that an employee's authorization to access an employer's computer system does not automatically terminate upon resignation or termination of employment. Rather, authorization ends only when the employer takes affirmative steps to revoke it. *Eddings*, 161 F.4th 199, 205-206 (3d Cir. 2025).

In *U.S. v. Eddings*, the Third Circuit held that "an employee's authorization to use his employer's computer ends when his employer takes an affirmative step to revoke it, not simply when he resigns." *Id*. at 207. The court explained that "employees lose the authorization to access their employer's systems when [the employer] has rescinded permission to access the computer." *Id*. at 206-207 (*quoting   Nosal,* 844 F.3d at 1029). The court emphasized that the employer must take concrete action—such as revoking credentials or blocking access—to rescind authorization. *Id*. The Third Circuit held that the employee's access did not violate the CFAA because "her employer had not taken a single step to rescind her permission to use it." *Id*. at 201.

As previewed above, a fair and plausible reading of Plaintiffs' Complaint is that Plaintiffs took no affirmative steps to prevent Defendant from accessing the computer system after his employment ended. Plaintiffs alleged that, "[u]pon termination, Dekeo immediately revoked all of Brogno's rights to access Kata, and any other internal Jiffy computer system or network." 2d.

---

[7] Accepting Plaintiffs' theory would produce the exact "far-reaching consequences" and "breathtaking" sweep that the Supreme Court warned against in *Van Buren*.

Am. Compl. at ¶ 23. Nonetheless, Plaintiffs alleged that "Brogno continued to access Kata remotely without Dekeo's authorization . . . to generate or acquire discount coupon codes to which he was not entitled and that Jiffy had not approved or authorized for his personal use or accounts." 2d. Am. Compl. at ¶¶ 24-25. It seems likely that Mr. Brogno's credentials remained active after his termination, dooming Plaintiffs' CFAA claim under *Eddings*.

### D. Plaintiffs Failed to Allege Cognizable "Loss" or "Damages" Under the CFAA.

Even if Plaintiffs plausibly alleged unauthorized access (they did not), Count I fails for the independent reason that Plaintiffs have not adequately alleged "loss" or "damage" as required by the CFAA's civil enforcement provision. The CFAA permits a civil action "only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1173 (11th Cir. 2017). Plaintiffs can only proceed under subclause (I), which requires "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030.

Here, Plaintiffs' alleged "loss" arises entirely from the value of merchandise that Mr. Brogno allegedly obtained without paying. But lost revenue from unpaid merchandise does not constitute "loss" under the CFAA unless it results from "interruption of service." *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 F. App'x 559, 562 (2d Cir. 2006). "[T]he plain language of the statute treats lost revenue as a different concept from incurred costs, and permits recovery of the former only where connected to an 'interruption in service.'" *Id*.

Here, Plaintiffs do not allege any interruption of service. The Jiffy website and Kata system allegedly continued to function normally; Mr. Brogno simply used them in ways Plaintiffs claim were unauthorized. Without an interruption of service, the value of the merchandise is not compensable as "loss" under the CFAA. *Id*.

18

**E.       Plaintiffs' Statutory "Trade Secret" Claims Should be Dismissed.**[8]

Plaintiff's claims under the federal DTSA and Pennsylvania Uniform Trade Secrets Act (PUTSA), Counts II and III, respectively, should be dismissed because Plaintiff failed to plead the existence of any trade secrets or the misappropriation of any trade secrets.

Count II fails because Plaintiffs do not plausibly allege the existence of a protectable "trade secret" within the meaning of the DTSA. To state a claim, a plaintiff must identify information that derives independent economic value from not being generally known and is subject to reasonable measures to maintain secrecy. 18 U.S.C. § 1839(3); *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). Vague, generalized descriptions of an internal system or its functions are insufficient. *Oakwood Labs.*, 999 F.3d at 905–06; *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021).

Likewise, Count III should be dismissed because Plaintiffs failed to allege a cognizable trade secret or its misappropriation under the PUTSA, 12 Pa. C.S. § 5301 et seq. Pennsylvania courts require plaintiffs to identify a specific, protectable trade secret, not a generalized system or collection of business practices. *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985); *Iron Age Corp. v. Dvorak*, 880 A.2d 657, 663-664 (Pa. Super. Ct. 2005).

Here, Plaintiffs merely describe "Kata" in broad functional terms (e.g., coupon logic, pricing controls, and backend systems) without identifying any specific, discrete trade secret or explaining how it is not generally known or independently valuable. Such conclusory allegations cannot support claims under the DTSA or the PUTSA.

---

[8] If this Court does not stay this matter because of the agreement to arbitrate but dismisses the claims based on the CFAA and DTSA, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Moreover, the alleged conduct—use of coupon codes, credits, and ordering mechanisms—sounds in misuse of access or fraud, not in misappropriation of a trade secret. The DTSA does not convert ordinary misuse of a system into a trade secret claim absent allegations that Defendant acquired, disclosed, or used specific secret information. *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 68 F.4th 792, 800 (3d Cir. 2023). Under the PUTSA, Plaintiffs also failed to plead "misappropriation," which requires acquisition, use, or disclosure of a trade secret through improper means. 12 Pa. C.S. § 5302. Allegations that Defendant misused access credentials or manipulated a system to obtain discounts sound in fraud or unauthorized access, not trade secret misappropriation. Accordingly, because Plaintiffs failed to plead a particularized trade secret or its misappropriation, Counts II and III should be dismissed.

### F.      Plaintiffs Failed to State a Claim for Breach of Fiduciary Duty.

Count IV should be dismissed because Plaintiffs failed to plausibly allege the existence of a fiduciary relationship or a breach independent of their duplicative tort and contract-based claims. Routine employer–employee relationships do not give rise to fiduciary duties under Pennsylvania law absent special circumstances demonstrating a relationship of "overmastering influence" or justified trust. *See Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 823 (Pa. 2017) (*quoting eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 23 (2002)). Here, Plaintiffs rely solely on Defendant's status as an employee but allege no facts showing a heightened relationship of trust or discretionary control sufficient to impose fiduciary obligations beyond ordinary duties. Such allegations are insufficient as a matter of law.

### G.      Plaintiffs Failed to State Claims for Conversion.

Under Pennsylvania law, conversion is defined as "the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's

20

consent and without lawful justification." *Underhill Coal Mining Co. v. Hixon*, 652 A.2d 343, 345 (Pa. Super. Ct. 1994) (*quoting Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 451, 197 A.2d 721, 726 (1964) and *Bank of Landisburg v. Burruss,* 524 A.2d 896 (Pa. Super. Ct. 1987), *allo, denied*, 532 A.2d 436 (1987)); *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987), *PTSI, Inc. v. Haley*, 71 A.3d 304, 314 (Pa. Super. Ct. 2012). However, not every unauthorized interference with property constitutes conversion.

Conversion requires an intentional exercise of dominion or control over property "which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *PTSI, Inc.*, 71 A.3d at 314. Pennsylvania courts apply the following factors set forth in the Restatement (Second) of Torts § 222A to determine whether interference is sufficiently serious to constitute conversion: (a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right inconsistent with the other's right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference; (e) the harm done to the chattel; and (f) the inconvenience and expense caused to the other. *Id*.

Plaintiffs' conversion allegations do not satisfy the serious interference standard. In Count V, Plaintiffs allege that Mr. Brogno obtained merchandise by using unauthorized coupons and credits, thereby depriving Jiffy of merchandise "without paying any money." In Count VI, Plaintiffs allege that Mr. Brogno charged personal expenses to the corporate credit card, thereby depriving Dekeo of money. These allegations describe, at most, unauthorized transactions—not the serious interference with property rights that conversion requires. Plaintiffs do not allege that Mr. Brogno permanently deprived them of property, refused to return property after demand, or exercised dominion over property in a manner inconsistent with Plaintiffs' rights for any

21

significant duration. The complaint alleges that Mr. Brogno placed orders and received merchandise, and that charges were processed on a credit card. These facts describe commercial transactions allegedly procured through fraud or breach of duty—not the kind of serious interference that justifies requiring a defendant to pay the full value of property.

In addition, Pennsylvania courts have consistently held that intangible digital property cannot support a conversion claim. In *TCS Black Label Realty, LLC v. Serhant Pa., LLC*, the Pennsylvania Superior Court held that "only tangible property is recoverable for actions of replevin or conversion," and that this traditional limitation applies to digital property interests. 352 A.3d 528, 545 (Pa. Super. Ct. 2026). The court explained that tangible property "can be physically felt or touched," while intangible property "does not have physical substance." *Id*. "Courts applying Pennsylvania law have considered digital property interests but have consistently found that these interests are unable to support a conversion or replevin claim." *Id*. Indeed, courts in this District applying Pennsylvania law have consistently found that digital property interests—including computer data, digital files, internet domain names, LinkedIn accounts, and social media accounts—are not subject to conversion. *Id*.

Here, the property Plaintiffs claim was converted consists substantially of intangible digital elements. Plaintiffs allege that Mr. Brogno "generate[d] or acquire[d] coupon codes" and "store credits" through the Kata system, which are purely digital, intangible constructs with no physical substance. These digital codes and credits cannot be "physically felt or touched" and therefore fall outside the scope of property subject to conversion under Pennsylvania law. While Plaintiffs also allege Mr. Brogno obtained physical merchandise, the gravamen of Count V is that he obtained the merchandise by misusing intangible digital property—the unauthorized codes and credits. The conversion claim thus depends on treating these intangible digital

22

elements as property subject to conversion, which Pennsylvania law does not permit. Just as domain names and social media accounts are not subject to conversion under Pennsylvania law, neither are digital coupon codes, store credits, or database entries.

### H.    Plaintiffs Failed to State Claims for Trespass to Chattels.

Pennsylvania courts have long held that trespass to chattel must be based on tangible property. The tort is governed by Restatement (Second) of Torts § 217, which provides that trespass to chattel may be committed by intentionally "(a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Pestco, Inc. v. Associated Prods.*, 880 A.2d 700, 708 (Pa. Super. Ct. 2005). Pennsylvania law, however, requires that the chattel be tangible. "Pennsylvania courts have long-recognized that the tort of trespass to chattel must be based upon some tangible form of property." *Id*.

> A tort based on interference with an individual's property right in a chattel, regardless of the nature of the chattel, presupposes the existence of that chattel. The action must therefore be limited to chattels of an existing nature; i.e. those whose existence is ascertainable by some concrete proof.

*Id*. Applying this principle, the *Pestco* court held that intangible information contained in bills of lading could not support a trespass to chattel claim because the information was not tangible property. *Id*. The property must have physical substance that can be perceived through the senses.[9]

In Count VII, Plaintiffs alleged that Jiffy "possessed a chattel in the form of Kata," and that Mr. Brogno "dispossessed Jiffy of Kata by obtaining unauthorized possession of it." Count

---

[9] In *TCS Black Label Realty*, the Pennsylvania Superior Court held that a Constant Contact database, Instagram account, digital marketing materials, and marketing website all constituted intangible digital property not subject to replevin or conversion—and by extension, not subject to trespass to chattel. 352 A.3d 545.

VIII alleges that Dekeo "possessed a chattel in the form of its corporate credit card," and that Mr. Brogno "dispossessed Dekeo of its corporate credit card for personal expenses." These allegations fail because neither the Kata system nor the corporate credit card usage constitutes a tangible chattel subject to trespass to chattel under Pennsylvania law. Moreover, Plaintiffs' own allegations undermine the tangibility requirement. They describe Mr. Brogno's conduct as "accessing" and "exploiting" computer systems to "generate" codes and credits. These terms describe interaction with intangible digital constructs, not physical chattels. One cannot "dispossess" another of a software system in the traditional sense required for trespass to chattel when the system remains operational and available to the owner.

### I.        Plaintiffs Failed to State a Claim for Fraudulent Inducement.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED.R.CIV.P. 9(b). "Under Rule 9(b), a plaintiff alleging fraud must plead '(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage.'" *Sun Co. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 369 (E.D. Pa. 1996) (*quoting Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 284 (3d Cir.), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992) (citation omitted)).

> There is a special kind of proximate cause requirement for fraud and misrepresentation, and plaintiff must demonstrate that a specific statement *caused* a specific harm." *Hurt v. Philadelphia Hous. Auth.,* 806 F.Supp. 515, 530 n. 25 (E.D.Pa.1992) (emphasis in original). "Plaintiff may not simply point to a bad result and allege fraud. Rather, plaintiff must ... inject precision and some measure of substantiation into [the] allegations [of fraud].... ***who, what, when, where, and how: the first paragraph of a newspaper***

24

**_story   would   satisfy   the   particularity   requirements_**." *In   re Chambers Dev. Sec. Litig.,* 848 F.Supp. 602, 616 (W.D.Pa.1994) (citations omitted)(emphasis added).

*Id*.

As set forth above, Plaintiffs have still not provided any details whatsoever as to the "who, what, when, where, and how" **_that allowed Plaintiffs to plead the conclusion that Mr. Brogno improperly accessed the computer system and generated the discounts and credits_**. Plaintiffs' allegations concerning the access "are no more than conclusions, [and therefore] are not entitled to the assumption of truth." *Connelly*, 809 F.3d at 787 (*quoting Iqbal*, 550 U.S. at 679). Other than pleading the conclusion that Mr. Brogno generated or acquired the discounts and credits, Plaintiffs pleaded no other facts whatsoever that would "inject precision and some measure of substantiation into [the] allegations [of fraud]." *Sun Co.*, 939 F. Supp. at 369. As such, Plaintiffs failed to plead sufficient factual matter to state a plausible fraud claim. *Iqbal*, 556 U.S. at 678.[10]

---

[10] At best, Plaintiffs' allegations allow for the possibility that Defendant may have acted in a way that Plaintiffs feel was unlawful. The pleading standards applicable to this action, however, require more from Plaintiffs than vague claims that Defendant caused them some vaguely identified harm. *Id*.

## III.    CONCLUSION

In sum, this Court lacks subject matter jurisdiction because of the agreement to arbitrate all of the claims asserted by Plaintiffs. In addition, Plaintiffs have failed to plead facts supporting all of their statutory and common-law causes of action, except potentially unjust enrichment. But to the extent that this Court does not stay the case because of the broad arbitration provision, yet dismisses Plaintiffs' claims under the CFAA and DTSA because Plaintiffs failed to plead sufficient facts to support those claims, this Court should not exercise supplemental jurisdiction over, and therefore need not analyze Plaintiffs' non-federal claims.

Respectfully submitted,

**WISLER PEARLSTINE, LLP**

*/s/ Brian R. Elias*
**BRIAN R. ELIAS, ESQUIRE**

*Attorneys for Defendant*

26

**CERTIFICATION THAT THE PARTIES MET AND
CONFERRED REGARDING THE ALLEGED PLEADING DEFICIENCIES**

I hereby certify that the parties' counsel have met and conferred over the course of this case regarding the alleged pleading deficiencies identified in the instant motion to dismiss. The parties remain unable to reach a resolution that eliminates the need for the instant motion.

Respectfully submitted,

**WISLER PEARLSTINE, LLP**

*/s/ Brian R. Elias*
**BRIAN R. ELIAS, ESQUIRE**

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the Defendant's Motion to Dismiss Second Amended Complaint and Memorandum of Law in Support thereof was served via the Court's electronic filing system upon all counsel of record.

**WISLER PEARLSTINE, LLP**

*/s/ Brian R. Elias*
Brian R. Elias

*Attorneys for Defendant*